UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MAZU INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.:   1:16-cv-01478 |
| ) | |
| WWW.MAZUSWIMWEAR.COM, ) | |
| ) | |
| Defendant. ) | |

**VERIFIED COMPLAINT**

For its Verified Complaint against the Defendant, Plaintiff Mazu International LLC, states as follows:

**Nature of Action and Relief Sought**

1. Plaintiff brings this *in rem* action under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (hereinafter "ACPA"), against the domain name, www.mazuswimwear.com (the "Domain Name").  Plaintiff Mazu International LLC ("Mazu") is the owner of the distinct trademark MAZU SWIM (hereinafter "Trademark").  The Domain Name contains Mazu's distinct Trademark and is confusingly similar to the Trademark.  Registration of the Domain Name by the current registrant is not, and has never been, authorized by Mazu.

2. As owner of the Trademark contained in the Domain Name, Mazu seeks the transfer of the Domain Name and/or the forfeiture of cancellation of the Domain Name as provided for in the ACPA.  15 U.S.C. § 1125(d)(2)(D)(i).

## The Parties

3. Plaintiff Mazu is a limited liability company with a principal place of business at 1460 Broadway, New York, New York 10036. Mazu sells swimwear products for women.

4. According to WHOIS domain name registration records, Defendant, www.mazuswimwear.com, is registered to Mazu Swimwear, a Hong Kong Company that, on information and belief, is incorporated as Mazu Concepts, Ltd. A copy of the WHOIS record for the domain name is attached as Exhibit A.

5. The Domain Name registry for www.mazuswimwear.com is VeriSign, Inc. of Reston, Virginia. VeriSign, Inc. is responsible for maintaining the <.com> registry.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331.

7. This Court has *in rem* jurisdiction over defendant pursuant to 15 U.S.C. § 1125(d)(2)(C) because VeriSign, Inc. is located in this judicial district. VeriSign's headquarters are located in Reston, Virginia.

8. The ACPA provides that an *in rem* action against domain names is proper if the court finds that the owners of trademarks protected by the ACPA are unable to obtain *in personam* jurisdiction over a person who would have been a defendant under Paragraph(1) of the ACPA. 15 U.S.C. § 1125(d)(2)(A)(ii)(I). Paragraph I of the ACPA provides as follows:

A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person ---

      (i)      has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

      (ii)      registers, traffics in, or uses a domain name that ---

            (I)      in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

            (II)      in the case of a mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

            (III)      is a trademark, word, or name protected by reason of section 706 of title 18, United States Code, or section 220506 of title 36, United States Code.

15 U.S.C. § 1125(d)(1).

9.      The legislative history of the ACPA indicates that the inability to obtain *in personam* jurisdiction occurs when a non-U.S. resident cybersquats on a domain name that infringes a U.S. trademark. H.R. Rep. 106-412 at 9 (1999). Such is the case here.

10.      *In rem* jurisdiction is proper in this instance as Mazu is not able to obtain *in personam* jurisdiction over the registrant/owner of the Domain Name because it is located outside of the United States, specifically, in Hong Kong, and it would otherwise have been a defendant in a civil action under Paragraph 1 of the ACPA, 15 U.S.C. § 1125(d)(1).

11.      The ACPA provides that, in an *in rem* action, a domain name shall be deemed to have its situs in: (1) the judicial district in which the domain name registry is located or (b) where documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain names are deposited with the Court. 15 U.S.C. § 1125(d)(2)(C).

12. This Court has jurisdiction of the *res* that is the subject of this Complaint - the Domain Name - because VeriSign, Inc., the registry for the Domain Name at issue here, is located in this District in Reston, Virginia.

13. Venue is proper in this Court because the registry, VeriSign, Inc. is located in Reston, Virginia. As specifically provided by 15 U.S.C. § 1125(d)(2)(A): "The owner of a mark may file an *in rem* civil action against a domain name in the judicial district in which the domain name registrar, registry, or other domain name authority that registered or assigned the name is located." Venue is also proper in this Court under 28 U.S.C. § 1391(b) because, upon information and belief, a substantial part of the events giving rise to the claims occurred in this District.

**Written Notice to Registrar**

14. Pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), Mazu intends to promptly notify the Registry, VeriSign, Inc., of this proceeding by providing it with written notice and a filed-stamped copy of this Complaint. As a result thereof and pursuant to 15 U.S.C. § 1125(d)(2)(D)(1), the domain name registrar, domain name registry, or other domain name authority shall:

(I) expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and (II) not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court. 15 U.S.C. §1125(d)(2)(D).

**General Allegations**

*Mazu's Rights in the Trademark*

15. Mazu has common law rights in the Trademark based upon its substantially continuous and exclusive use of the Trademark in commerce in the United States since at least 2012. The Trademark has become a distinctive identifier of goods provided by Mazu.

16. Mazu expects the United States Patent and Trademark Office ("USPTO") to recognize the inherent distinctiveness and exclusive rights of use of Mazu's Trademark by granting the a Untied States Trademark Registration, the application for was filed on March 21, 2016 under Ser. No. 86946897. A copy of the USPTO record showing the filing status is attached hereto as Exhibit B.

17. There has been no objection to the Trademark Application filed by any person.

18. Once the registration is granted, it will constitute "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration." 15 U.S.C. § 1115.

19. Mazu registered the website www.mazuapparel.com on March 22, 2011.

20. Mazu began using the Trademark in commerce on or about March 31, 2012 in retail clothing stores.

21. On or about December 11, 2013, an entity by the name of Mazu Swimwear registered the Doman Name with GoDaddy.com, LLC without permission of plaintiff, Mazu.

22. The website found at the Domain Name, like Plaintiff Mazu's website, mazuswimwear.com, sells swim wear. While the website found at the Domain Name advertises swim wear for sale in Hong Kong Dollars (HKD), there is a drop box for easy conversion to United States Dollars.

23. The website found at the Domain Name also advertises worldwide shipping.

24. Social media posts ascribed to the registrant/owner of the Domain Name reflect an effort to market and sell swim wear in the United States (examples attached as Exhibit C).

25. Some social media posts by Mazu Swimwear explicitly confirm that the intent to sell and ship to the United States with comments stating that Mazu ships "for free worldwide. The shorts can arrive in New Jersey, NY within 3-4 days." (Exhibit C).

26. On or about May 29, 2014, Mazu registered and owned and began operating the domain name www.mazuswim.com as its official website. This website is where the public is able to access information about the products it advertises and sells, specifically, swim wear. Mazu invested substantial resources in establishing the goodwill of the Trademark.

*Infringing Activities by the Owner of the Domain Name*

27. The ACPA lists nine nonexclusive, nonexhaustive factors that a court may consider in determining whether a person has engaged in bad faith registration, trafficking in or use of another's trademark:

    (I) the trademark or other intellectual property rights of the person, if any, in the domain name;

    (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

    (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

    (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

    (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI)     the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services or the person's prior conduct indicating a pattern of such conduct;

(VII)     the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII)     the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX)     the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of section 43.

15 U.S.C. § 1125(d)(1)(B)(i).

28.     The current owner of the Domain Name, Mazu Swimwear, registered the Domain Name in bad faith and has shown a bad faith intent to profit from the goodwill of the Trademark by engaging in conduct in one or more of the ACPA statutory criteria listed in Paragraph 21 above. More specifically:

(a)     The Domain Name was registered by Mazu Swimwear December of 2013, after plaintiff Mazu's Trademark became distinctive and an identification of source of Mazu's products.

(b)     The current owner of the Domain Name, Mazu Swimwear, had actual knowledge of plaintiff Mazu's prior use of the Trademark at the time the Domain Name was registered by Mazu Swimwear.

(c)   The current owner of the Domain Name, Mazu Swimwear, is not actually known by that name but is known by Mazu Concepts Ltd.

(d)   The current user of the Domain Name, Mazu Swimwear, is not making a bona fide noncommercial or fair use of the Domain Name.

(e)   The current owner of the Domain Name, Mazu Swimwear, provided material and misleading false contact information when applying for the registration of the Domain Name.

(f)   The current owner of the Domain Name, Mazu Swimwear, is attempting divert consumers from the Trademark's owner's online location to a site accessible under the Domain Name that could harm the goodwill represented by the Trademark for commercial gain by creating a likelihood of confusion as to the source of the site.

29.   The current owner of the Domain Name, Mazu Swimwear, has not and cannot satisfy any of the ACPA's statutory criteria listed in Paragraph 21 above that tend to indicate an absence of bad faith intent to profit from the goodwill of the Trademark.

## Count One

*Violation of Anticybersquatting Consumer Protection Act 15 U.S.C. § 1125(d)*

30.   Mazu repeats and incorporates by reference the allegations of Paragraphs 1 through 27 as though fully set forth.

31.   Mazu's Trademark was distinctive at the time of the registration by the current owner of the Domain Name, Mazu Swimwear, and was, and is, protected by the Lanham Act, 15 U.S.C. § 1125.

32.   The Domain Name is confusingly similar to the Trademark.

33.     The registration of the Domain Name by the owner shows a bad faith intent to trade on the goodwill of Plaintiff, and therefore constitutes cybersquatting in violation of the ACPA.

34.     The current owner of the Domain Name, Mazu Swimwear, is located outside of the United States, in Hong Kong, and this Court lacks personal jurisdiction over it.

WHEREFORE, Plaintiff Mazu prays for judgment and relief as follows:

(A)     That the Domain Name be transferred to Plaintiff Mazu or in the alternative, cancelled and/or forfeited;

(B)     For an order, that Verisign, Inc. transfer the Domain Name to Plaintiff Mazu; and

(C)     An award to Plaintiff Mazu of all such other and further relief as this Court may deem just and proper.

MAZU INTERNATIONAL LLC

By: /s/ David A. Warrington

David A. Warrington (VSB No. 72293)
2318 Mill Road, Suite 1100
Alexandria, VA 22314
Phone: 703-647-5926
Fax: 703-647-5966
david.warrington@leclairryan.com

*Counsel for Mazu International LLC*

## VERIFICATION

Frank Palmeri, under penalty of perjury of the laws of the United States declares:

That he is the President of Mazu International LLC and is responsible for Mazu International LLC's trademark and domain name enforcement, that he has read, is familiar with, and has personal knowledge of the contents of the foregoing Verified Complaint, and that the allegations thereof are true and correct or, to the extent to which matters are not within his personal knowledge, that the facts stated therein have been assembled by authorized personnel, including counsel, and that he is informed that the facts stated therein are true and correct.

Executed this 21st day of November 2016 in New York, New York.

Frank Palmeri

1798620-1